99 N.E.2d 659 (1951)
155 Ohio St. 529
STATE ex rel. SHARPE et al.
v.
HITT, Auditor.
No. 32444.
Supreme Court of Ohio.
June 13, 1951.
*661 Arthur W. Gurklies, Urbana, for appellants.
Clifford R. Wagner, Urbana, for appellee.
ZIMMERMAN, Judge.
As has been noted in the statement of the case, this controversy was decided by the Court of Appeals upon the petition and the amended answer. The allegations of the petition and the admissions of the amended answer clearly show that the initiative petition placed in the hands of respondent city auditor met the requirements of a valid petition of that kind within the rules prescribed in Section 4227-1 et seq., General Code, which sections pertain to the initiative and referendum as they may be used with respect to municipal ordinances.
Therefore, the controlling question in this case is whether the respondent was justified in refusing to certify to the Champaign county board of elections the initiative petition filed with him by the relators to repeal the existing municipal ordinances covering the parking of vehicles with the installation and use of parking meters and to enact a new measure removing from the streets of the city all the parking meters "now installed and in use."
*662 Section 1f, Article II of the Constitution of Ohio, adopted in 1912, provides: "The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law."
Section 4227-1, General Code, as amended in 1914, recites in part:
"Ordinances and other measures providing for the exercise of any and all powers of government granted by the constitution or now delegated or hereafter delegated to any municipal corporation, by the general assembly, may be proposed by initiative petition. Such initiative petition must contain the signatures of not less than ten percentum of the electors of such municipal corporation.
"When there shall have been filed with the city auditor * * * a petition signed by the aforestated required number of electors proposing an ordinance or other measure, said city auditor * * * shall, after ten days, certify the petition to the board of deputy state supervisors of elections of the county wherein such municipality is located."
Section 4227-2, General Code, reads in part: "Any ordinance, or other measure passed by the council of any municipal corporation shall be subject to the referendum except as hereinafter provided. No ordinance or other measure shall go into effect until thirty days after it shall have been filed with the mayor of a city or passed by the council in a village, except as hereinafter provided."
The remainder of the section last quoted has to do with requirements for a valid referendum petition, its filing with the designated authority within 30 days after the ordinance or other measure to which it is directed has been filed with the mayor or passed by a village council and with the subsequent disposition of such petition.
Then Section 4227-3, General Code, describes the ordinances which are not subject to referendum, including "emergency ordinances" passed by a two-thirds vote of those comprising the legislative body involved and which go into immediate effect.
This and other courts have declared that constitutional, statutory or charter provisions for municipal initiative or referendum should be liberally construed in favor of the power reserved so as to permit rather than preclude the exercise of such power, and the object clearly sought to be attained should be promoted rather than prevented or obstructed. State ex rel. City of Middletown v. City Comm. of City of Middletown, 140 Ohio St. 368, 44 N.E.2d 459; 62 Corpus Juris Secundum, Municipal Corporations, § 451 (b), page 870.
It is interesting to note that neither the Constitution of Ohio nor the statutes place any definite limitations on the use of the initiative. And the obvious purpose of the initiative as it affects municipalities is to reserve to the people of those municipalities the right to exercise their inherent or political power over the council or other legislative body as to local legislation. Moreover, especially in the light of Section 2, Article I of the Constitution, providing that "All political power is inherent in the people", the adoption of the initiative and referendum as a part of the Constitution evidenced a firm resolve on the part of the people that the legislative branch of the state or local government shall be subject to the control of the people with respect to legislative measures, except as otherwise provided.
It is apparent that the people of the city of Urbana could have had no referendum on the ordinances relating to the designation of individual parking spaces for vehicles in that city with the installation and use of parking meters in connection therewith, for all such ordinances were enacted as emergency measures becoming immediately operative, and under the decisions of this court the declaration of the existence of an emergency is conclusive and not subject to referendum or judicial review.
*663 Quite recently this court decided that very matter in the case of State ex rel. City of Fostoria, v. King, Aud., 154 Ohio St. 213, 94 N.E.2d 697, 698. The third and fourth paragraphs of the syllabus thereof read:
"3. An ordinance enacted as an emergency pursuant to the provisions of Section 4227-3, General Code, is not subject to referendum under the provisions of Section 4227-2 et seq., General Code.
"4. The duty and responsibility of determining the emergency and the necessity that a measure go into immediate effect and of giving reasons for such necessity are placed by Section 4227-3, General Code, in the council or other body corresponding to the council of a municipality. Such a determination by a municipal council and the soundness of the reasons stated by such council for such necessity are not subject to review by the courts."
In adopting the initiative and referendum provisions of Section 1f, Article II of the Constitution of Ohio, it was certainly not the intention of the people to leave the voters of a municipality powerless to override legislation which might be obnoxious to them. Even though the referendum is not available because an objectionable ordinance was passed as an emergency measure, perhaps arbitrarily, the initiative always remains as an authorized remedy. Otherwise, the people who elect the members of council and pay their salaries would occupy a place below the council in legislative power. Surely such was not the design and purpose of Section 1f, Article II of the Constitution.
This brings us to a consideration of the case of State ex rel. Smith v. City of Fremont, 116 Ohio St. 469, 157 N.E. 318, decided in 1927. It is not unreasonable to suppose that the decision of the majority of the court in that case was influenced to some extent by the facts presented, involving as they did an important question of policy having to do with the public health and welfare. In that case, it is disclosed that a difference of opinion existed among the residents of the city of Fremont as to the desirability of installing a filtration plant for the purification of the city's existing water supply or of drilling additional wells and constructing an emergency reservoir and equipment. The council of the municipality favored the former plan, had already taken steps to accomplish it and passed an emergency ordinance to carry it into effect. This latter action was met by an initiative petition providing for the drilling of additional deep wells and of securing a water supply from these wells and from others then in existence. The initiative petition was submitted to the electors at a general election and was adopted by the required number of votes. An action in mandamus was then instituted to require the city to proceed in accordance with the initiative ordinance as approved by the electors. In denying the writ the majority of this court said in its per curiam opinion:
"The filing of the initiative petition on June 28, 1926, was simply an effort to nullify the action of the city council in respect to its policy relating to the construction of a filtration plant. The only method by which the legislation of the city council could be annulled, under our present Constitution, would be by the employment of the referendum, not the initiative. However, since the city council declared the measure to be an emergency and in the interest of public health and safety, and that is conceded, there could be no referendum. The effect of the initiative petition and its subsequent adoption by the people would be nothing less than a referendum upon the measure adopted by the city council. It is the invoking of initiative legislation as a substitute for and in lieu of a referendum; it is an attempt to repeal legislative action by invoking initiative action."
Judge Allen wrote a vigorous dissenting opinion concurred in by Chief Justice Marshall. To the writer, at least, the propositions advanced in the dissent are unanswerable. Judge Allen stated that the effect of the majority opinion was to limit the subjects upon which the electors of a municipality could take initiative legislative action to subjects which had not *664 already been treated by council in a contrary manner. She then pointed out that there is not only no provision of law restricting the use of the initiative but under the express language of Section 1f, Article II of the Constitution, both the initiative and referendum powers are reserved to the people "on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action."
Next she asserted that undoubtedly the city council itself could have initiated and passed an ordinance in conformity with the one contained in the initiative petition, which, without an express repeal of the initial ordinance on the same subject, would have operated to supersede and nullify such initial ordinance. In other words, a repeal by implication would thus have been brought about. The conclusion is then reached that under the precise phrasing of Section If, Article II, the people of a municipality can, through the initiative, enact a measure conflicting with legislation previously passed by council even though they thereby nullify the action of council, so long as the question upon which they enact such an initiative ordinance is within the power of the municipality to control by legislative procedure. The holding of the majority of the court is termed "a drastic invasion of the unlimited legislative power reserved to the people of municipalities by the amendments of 1912."
Judge Allen next commented on the fact that, since the people in a municipality are precluded from having a referendum on an emergency ordinance and since the declaration of an emergency in an ordinance may not be judicially reviewed, the council of a municipality could arbitrarily deny the people a voice in legislative matters, and that such a situation would be repugnant to the purposes sought to be accomplished by the people in adopting the initiative and referendum. According to Judge Allen, "It was not the intention of the framers of the constitutional amendments of 1912 when they provided for the initiative in municipalities that the subjects upon which the initiative could be exercised should be limited to those not subject to the referendum. The very wording of article 2, § 1f, refutes the idea. The Constitutional Convention and the electors who enacted the amendments of 1912 meant the voters themselves to have the power to enact legislation as a part of the legislative power, subject to no limitations excepting those specifically expressed in the Constitution itself."
This court, as now constituted, agrees with the reasoning of the dissenting opinion in State ex rel. Smith, v. City of Fremont, supra, and, since the majority holding in that case is contrary to the position presently taken in this opinion, the same is overruled.
Even though this opinion suggests an overlapping use of the initiative and referendum, we are confident it sustains the intentions and purposes of the people in making the initiative and referendum a part of their organic law. Of course, the referendum is not as wide in scope or range as the initiative, the former, by its very name, being restricted to the referring of legislative measures to the electors for their acceptance or rejection.
Supporting inferentially at least the conclusion we have reached is the case of City of Youngstown v. Craver et al., Board of Elections, 127 Ohio St. 195, 187 N.E. 715, wherein it was held that the adopted charter of a municipality may be abolished by the use of the initiative.
There is a dearth of authority on the precise question raised in the instant litigation. The case of Bachmann v. Goodwin, 1939, 121 W.Va. 303, 3 S.E.2d 532, corresponds with our view of the matter, whereas Commonwealth ex rel. Heinly v. Marks, 1915, 248 Pa. 518, 94 A. 191, is opposed.
Upon the basis of what has been said, the judgment of the Court of Appeals is reversed and the respondent is directed to certify the initiative petition filed with him by relators to the Board of Elections of Champaign County, in accordance with Section 4227-1, General Code.
Judgment reversed.
*665 WEYGANDT, C. J., and STEWART, MIDDLETON, TAFT and HART, JJ., concur.
MATTHIAS, Judge.
I concur in the judgment. However, I am of the opinion that the decision in State ex rel. Smith, v. City of Fremont, 116 Ohio St. 469, 157 N.E. 318, was correct upon the facts presented by the record in that case, and that the overruling thereof is unnecessary and unwarranted.